May it please the Court, my name is Mark Fieser with Baker & McKenzie, and I represent the plaintiff appellant in this case, Terry Myers. I'd like to reserve two minutes for rebuttal. Your Honors, this case is about a pretrial civil detainee who was housed for a period of nearly nine months in the Shasta County Jail's most restrictive unit, the hole. The defendants forced Mr. Myers to choose between remaining in the hole or being placed with penal inmates where he would have been at risk of physical attack, neither of which were permissible under constitutional principles or state law. Now there are a number of issues that are raised on this appeal, however, given the limited time for argument today, I would like to focus on two. Mr. Myers' 14th Amendment due process claim and the defendant's waiver argument. Starting with Mr. Myers' 14th Amendment due process claim, this case is identical to Jones v. Blantis. The Ninth Circuit held that a presumption of punitive treatment arises where a civil detainee is held under conditions that are identical to or worse than those of penal inmates. But Jones' opinion came out two years after these incidents occurred, so how could the defendants have known about their obligations? That's a good question. The Supreme Court held in Youngberg that civil detainees are entitled to more considerate treatment than those who are held for the purposes of punishment, and the court also held in Bell v. Woolfish that pretrial criminal detainees cannot be punished. And as the court in Jones v. Blantis explained, it stands to reason that a pretrial civil detainee would be entitled to at least as much rights as either of those two parties. And this court actually addressed the specific question of qualified immunity in the context of SVPA detainees in Hedrick v. Hunter, noting that because Youngberg applied to civil detainees and that the SVPA detention is a civil detention, a reasonable official reading Youngberg would be put on notice that they would be held to the Youngberg standard. So it's your position that this case could be Jones if Jones had not happened? Yes. And the only difference between Jones is that they have offered him this choice, but both choices presented to Mr. Myers in this case were essentially the two conditions that Jones actually was housed under, because in Jones he was confined in the general population for a year and then he was housed in the TSEP unit, which is essentially identical to the hole at the Shasta County Jail. And just as in Jones, the defendants in this case have not offered any legitimate justification for placing Mr. Myers in the hole, because Mr. Myers was rated as a low security threat and he had no history of attacking inmates and staff or of trying to escape. Additionally, as I was mentioning, the only difference in this case, I mean, this is basically just Jones, but the defendants are arguing that Mr. Myers in this case waived his due process rights because he didn't submit to their strong arm tactic to force him to be housed with penal inmates in the protective custody unit. And the district court furthered that injustice by granting summary judgment to the defendants on the basis of this waiver argument. And I'd like to pause here for a second and note that Mr. Myers' refusal to be placed in the protective custody unit was not just based on some, you know, desire to preserve his abstract constitutional or state law rights. The defendant's declaration acknowledges SVPA detainees are at a particular risk of attack if placed among penal inmates because of the sexual nature of their crimes, and therefore he legitimately feared being placed with penal inmates. But if he's in the protective custody unit, is that concern still valid? I mean, the whole point of being in that unit is you're in protective custody. Well, you know, obviously he probably would be more protected in the protective custody unit. I was just explaining Mr. Myers' motivations for refusing the protective custody unit. However, he had a basis in both constitutional and state law to refuse that waiver because the California statute that governs the detention of SVPA detainees guarantees three different rights. He has to be housed separately from penal inmates under conditions that are no more restrictive than necessary, and they have to provide continuing mental health treatment. And in this case, placing him in the protective custody unit would have violated his right to be housed separately from penal inmates. And it would have potentially waived his right to be housed under conditions that were no more restrictive than necessary because in Jones there's a presumption of punitive treatment where the conditions are identical to those of penal inmates, and the protective custody unit houses penal inmates, and therefore, by definition, it's the same conditions. But how did what he chose or tacitly chose, that is, accepting detention in the hole, how did that make the situation any better? How did it make it? It didn't. He was forced with a catch-22, either one of his choices. I understand that, but isn't there at least some question about how severe the problem is or mitigation or something? I really don't understand the logic behind accepting assignment to administrative segregation, which in this context we call the hole, when the protective custody option was clearly made available to him. This court has held that even in the context of penal detainees, the state cannot withhold even discretionary benefits in exchange for a waiver of constitutional rights. Mr. Myers had a right under both the procedural and substantive due process clause not to be housed with penal inmates. And it seems logical. Did he accept assignment to the hole? He protested it the whole time. No, no. Yeah, that's exactly right. He did not accept. He was placed in the hole. But if the state cannot withhold discretionary benefits in exchange for a constitutional waiver, surely in the context of civil detainees it can. How did the protective custody work in this case? How did it work? How did it work in this case? Well, there's not a lot of information about it in the record other than what the defendant's declaration says, but apparently it's where they take certain inmates from the penal population and separate them. And then once you're in that unit, you have exactly the same rights as you would if you were in a general population unit of penal inmates. So it's the same conditions, just a different subset of the penal population. They have increased activities. They can exercise more freely, showers, TV, stuff like that. And I'd also like to raise that there's a really ---- It is strange to me, too, that he wouldn't accept that. It says where he would have waived something. Well, if he still had a claim, he wouldn't have waived anything, would he? Well, he would have had to actually waive his rights to be housed. He would have actually had to waive his rights under the California statute in order to be placed into the protective custody unit, and that's exactly what the defendants were trying to force him. Was there a requirement that he sign something, waive it, and never be there? Absolutely. Yeah, the statute requires that he ---- It's the detainee's choice whether or not to be placed, to be taken out of the three conditions that I described. And then even in that circumstance, the court is supposed to review it to determine whether or not it's voluntary. And I think there's a really important public policy issue that's raised by this waiver argument, because there would be nothing in the future, if the court upholds it, from the jail putting SVPA detainees back into the hole in the future, so long as they once again offer this choice, because they'd always be faced with a catch-22. Do I give up my rights under the statute or do I waive my rights under the due process clause by staying where I am? And I think that that's a dangerous principle, particularly when the court's already said that you can't withhold discretionary benefits in exchange for a constitutional waiver. I'd just like to reserve two minutes for rebuttal, so I'd just like to briefly conclude that this case is rather straightforward. The defendants violated Mr. Meyer's rights by placing him in the hole, and then they continued that violation by making him choose between giving up his rights under the California statute or staying in the hole. The district court erred in granting summary judgment on the basis of waiver and qualified immunity, and therefore we respectfully request that the court remand for further proceedings under the proper legal standard and that Mr. Meyer's be appointed counsel on remand. Thank you. Thank you. Good morning, Your Honors. I'm Gary Brickwood, appearing for each of the governmental entity defendants, the local defendants in the case and the FLEs. I believe that there is an issue that relates both to the question of waiver and to qualified immunity that I'd like to address first, and that is how this Penal Code section 4002 should be evaluated by the court in the context of the Youngberg's decision requirement for more considerate treatment. I think it's apparent that prior to 2002, in this case, arose, most SVP civil detainees were housed in local jails in what are commonly referred to as pod housing. That is, they would be housed in a protective custody classification, where there would be 10, 12, perhaps 25 in a larger jail. Sex crime, penal inmates housed together in a dormitory-type housing, where during the day they had common use of a day room to watch television, use a telephone, shower, and et cetera, and their beds or bunks were literally in that same pod or day room, so they were not segregated from one another in any respect. When the legislature passed 4002, effective January 2002, I think it's reasonable to surmise that what the legislature was doing was placing a higher priority in terms of inmate or detainee housing on safety by segregating them from penal inmates than on the detainee's right to watch television or use the telephone at their choosing. So if what the statute says is plain on its face, don't we interpret the statute from what it says plainly on its face? Certainly. But I think the statute does say that the detainee must be segregated and under no additional restrictions that are necessary for his safety. So the question is, for the average county jail, not Coalinga or Atascadero State Hospital, is there a way or was there in 2002 to segregate an inmate in what they call the hole, but in prisons across the state are referred to as administrative segregation, where they still get reasonably necessary use or free use of a day room? Segregation means, for example, to put it in a simple context. I've got two separate concerns with that, so let me try one and then I'll get to the other one. The first is that what difference does it make, I mean, how does the legislature take control of this if a plaintiff or if somebody being held by civil commitment has a constitutional right not to be deprived of or not to be held in conditions that are punitive, where does the legislature come in and say, well, we're going to put that aside and decide that segregation is more important? I mean, the statute really doesn't speak to that at all, does it? I don't believe it does, and I'm not trying to argue that the statute surpasses or cancels the constitutional right described in Youngberg and the later cases, but I think that the question on the issue of qualified immunity, I think the statute certainly informs local jailers, captains, sheriffs. Let's look at the statute. I think this was suggested by Judge Roth's question. The statute says, for purposes of this subdivision, administrative segregation means separate and secure housing that does not involve any deprivation of privileges other than what is necessary to protect the inmates and staff. How is not having access to a day room, how is being held in the hole necessary for protection of inmates and staff? Well, what I'm trying to argue is that administrative segregation existed in these jails long before Penal Code section 4002. But administrative segregation, as apparently used in the jails, doesn't appear to be administrative segregation as used in the statute. Well, the question is this, and that's what I was trying to address. If you have administrative segregation, it's a classification, it means that you have to be separated from all other penal inmates and even civil detainees in your housing and in your day-to-day activities. In a county jail, there isn't a facility, there isn't, without building a new facility or a new wing. Well, in this case, he was in the medical unit for about a quarter of his time. He was. So that there was a different facility that complied with the statute. Yes and no. Certainly he was housed in the medical unit. They needed the medical unit for medical emergencies, and the record honestly doesn't address whether they needed it later in the year. It's hard to assume that the last three quarters of his time were filled up with repeated medical emergencies that made the medical unit unavailable, or that the county couldn't be expected, oh, gee, if we don't have sufficient facilities because we've had a series of medical emergencies, that maybe they have to figure out something else. Certainly. I've got to say, I have a hard time understanding, except for the confusion of administrative segregation being used in two very different fashions, how you can get to a conclusion that justifies the kind of administrative segregation, i.e., the whole, that he was held in for such a long time. Well, I acknowledge that certainly later, by the declaration of Van Buskirk, they made changes to the medical unit so that Mr. Myers, when he came to the jail, unrelated to this case, after 2002, was housed in medical. We acknowledge that. In 2002, Van Buskirk, the captain, the one who made the decision, conferred with CDC representatives, read 4002, already had a classification for administrative segregation, and interpreted the statute to mean that's where he was housed. They didn't change it to make it any more onerous on Mr. Myers, nor did they change it to make it less onerous. The practicalities were to make sure I understand, not to make it any more onerous, you mean, as compared to what their understanding of administrative segregation was? That's what I mean. It certainly was more onerous with regard to the conditions in which he lived. There's a little question that being moved from the medical unit to the whole was substantially more onerous. It was more restrictive and more onerous, I acknowledge that, yes. I wanted to ask a question about the waiver. Sure. Is it true, as I understood your opposition to say, that if he had said, well, go ahead and put me in the protective unit custody, that he would have waived his rights under 4002? He would have waived the requirement under 4002 to be housed in administrative segregation. I don't believe he would have waived any claim that either of those was somehow wrongful. Would he have waived his right not to be housed with penal inmates? Yes. Because protective custody would have meant that it would have gone back to that sort of pre-2002 situation where they housed civil detainees in a pod with sexually violent other inmates and civil detainees, if there were any, in the jail with a similar history. That constitutional right is more valuable to him than the immediate circumstances of his detention. Doesn't he have a right to preserve that constitutional right? I think, yes. I think he could preserve it by, first of all, the waiver is a petition to the court. He could have preserved it by petitioning the court and then filed a lawsuit and said, I shouldn't be housed in administrative segregation or protective custody because he could have alleged that both were unlawful housing, for example. He wasn't being asked to waive any particular right to bring an action before the court. He was being asked whether he wanted to give up the safety of administrative segregations and the necessary hardships that went along with that, or the attendant hardships, or enjoy more free use of the day room. Could we uphold the district judge's decision that he loses because he waived? I didn't understand the district's court decision to say he loses because he waived, at least as I understand the court's question. My understanding was that the court ruled that he had waived the right to bring monetary damages by his failing to act to protect himself, I think, was the phrase that the court used, or at least was the phrase from the Berry court on which the district court relied. And I think the court's holding is limited to that issue of monetary damages. And then the court discussed, well, what about the injunctive relief as against the entity? And the court, of course, had found qualified immunity as to all of the individual defendants. And so on the issue of a remedy against the entity, the court found that there had not been a constitutional violation. I didn't interpret that to mean that the court had found that he had waived that right. I think the court simply found there was no constitutional violation. I don't think the court was holding that because he didn't accept the protection of the entity, that he waived his rights against the defendants? I think that the district court held that he waived his right to claim damages against the entity. What else was he really going to get? I think that was it. I think because the court had determined that he had not sought injunctive relief. Yeah. Certainly. I agree with that. So you would say that the waiver we should uphold to the district judge on that basis? I would urge the court to uphold the waiver of the claim for monetary damages against the entity, yes. Which is all he was asking. Well, it's not all he claims he was asking now, but I think that's all he was asking then, yes. What is he asking now? I think the appellant's brief seeks to revive the injunctive relief claim. Oh, I see. Okay. I'd submit my argument. Thank you. Is he still a civil detainee? Yes. And so he's subject to coming back periodically for reevaluation or reconsideration of his status? I would guess he's been back at least two times since this incident and will be back again, yes. Thank you. Mr. Fraser? Yes. Thank you, Your Honors. I don't have a whole lot to add because I think the court's rightly focusing on the reasonableness of the county's interpretation of the statute in this case. It's pretty clear that it requires no deprivations other than what are necessary. The whole is the most restrictive, most punitive unit in the jail, and there's just no way you can reasonably read that statute to refer to that unit, despite the fact that they shared a name. Would you agree that the waiver aspect of this judge's opinion only relates to damages not to future injunctive relief? Only to the extent that the court dealt with injunctive relief on different grounds, saying that he hadn't pled injunctive relief. So the court didn't really specifically say that the waiver argument wouldn't apply to injunctive relief. The court absolutely didn't say that because they had already dealt with injunctive relief. But Myers is seeking injunctive relief and damages. The complaint clearly in the caption stated he wanted injunctive relief and contained an analysis of why it was appropriate in that case. And the defendants are basically conceding this waiver point, and obviously, as I mentioned before, there's a really dangerous precedent that would be set by this for SVPA detainees across the state. It's completely a loophole around the requirements of Section 4002B, and therefore we are respectfully requesting that the court reject the waiver argument and remand for further proceedings. Thank you. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Hug, Clifton, Roth